IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action  1:14-cv-00870-MSK-NYW

DOMINGO RUIZ,
MICHAEL BRYANT

        Plaintiffs,

v

ACT FAST DELIVERY OF COLORADO, INC.,
POWERFORCE OF COLORADO, INC.

        Defendants.

_____

RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE
_____

Magistrate Judge Nina Y. Wang

      This matter comes before the court on two motions:  (1) Plaintiffs' Motion to Dismiss Defendants' Counterclaims [#35] ("Plaintiffs' Motion to Dismiss"), filed by Domingo Ruiz ("Plaintiff Ruiz" or "Mr. Ruiz") and Michael Bryant ("Plaintiff Bryant" or "Mr. Bryant") (collectively, "Plaintiffs") on August 13, 2014, and (2) Defendants' Partial Motion to Dismiss Pursuant to Fed. R. Civ. P. 12(b)(6) ("Defendants' Partial Motion to Dismiss") filed by Act Fast Delivery of Colorado, Inc. ("Act Fast") and Powerforce of Colorado, Inc.'s ("Powerforce") (collectively "Defendants") on September 2, 2014  [#36].  These motions were referred to the Magistrate Judge pursuant to the Order of Reference dated April 15, 2014 [#7] and the memorandum dated September 17, 2014.  [#44, #45].

      The court has carefully considered the motions and related briefing, the entire case file, and the applicable case law.  For the following reasons, I RECOMMEND that:

(1) Plaintiffs' Motion to Dismiss be GRANTED, on the ground that the indemnification counterclaims asserted by Defendants fail to state a viable claim for relief under Fed. Rule Civ. P. 12(b)(6); and

(2) Defendants' Partial Motion to Dismiss be GRANTED, as to Plaintiffs' claim for retaliation arising from Defendants' assertion of a counterclaim for indemnification, respectively.

## BACKGROUND

Plaintiffs Domingo Ruiz and Michael Bryant (collectively, "Plaintiffs") filed their original putative class action Complaint in this case on March 25, 2014 against Defendants [#1], and the following is a recitation of the factual allegations contained in the original Complaint. Plaintiffs allege that Powerforce is the successor-in-interest to Act Fast. [*Id.* at ¶¶ 26-29]. Plaintiffs further allege that they worked for Defendants as delivery truck drivers [*id.* ¶ 31], and that Defendants misclassified Plaintiffs as independent contractors to avoid their obligations to comply with the overtime and minimum wage provisions of the federal Fair Labor Standards Act ("FLSA") and Colorado's Wage Claim Act ("CWCA") (collectively, "Wage Claims"). [*Id.* ¶¶ 30-55].

On July 3, 2014, Defendants answered Plaintiff's original Complaint. [#22, 23]. Twenty days later, Defendants amended their original answers as of right pursuant to Fed. R. Civ. P. 15(a)(1)(A) to include counterclaims for indemnification from Plaintiffs based on alleged Independent Contractor Agreements ("ICAs") between each of the Plaintiffs and each of the Defendants, respectively. [#24, 25]. The ICAs all contain the following indemnification provision:

> In further consideration, Contractor will indemnify and save harmless Company, and its agents, employees, officers, directors, shareholders, and insurance carriers

2

> against any and all liability, loss damages, cost and medical expenses, and all other expenses of any kind or description, including attorney's fees and investigative costs, which Company and its agents, employees, officers, directors, shareholders, and insurance carriers may incur, or be required to pay, and against any and all claims for damages, personal injuries (including death) or claims which may be asserted against Company and its agents, employees, officers, directors, shareholders, and insurance carriers by any persons, firm or corporation, including claims which may be asserted against Company and its agents, employees, officers, directors, shareholders, and insurance carriers by any persons, firm or corporation, including claims which may be asserted against Company's either by its own employees of Contractor or others whether for workman's compensation, in tort or otherwise in any manner resulting from or arising out of the operations of Contractor.

[#24-1, at 4; #24-2, at 4; #25-1, at 4]. The gravamen of Defendants' indemnification counterclaims is that "the claims asserted by [Plaintiffs] in the Complaint and the expenses and fees [Defendant] Powerforce has incurred, and will incur, to defend against them fall within the terms of the indemnification provisions" of the ICAs ("Indemnification Counterclaims"). *See e.g.*, [#24, at 14, ¶ 9].

On August 13, 2014, Plaintiffs in turn filed an amended Complaint ("First Amended Complaint") alleging that Defendants' Indemnification Counterclaims constitute unlawful retaliation under FLSA section 29 U.S.C. § 215(a)(3). [#34, ¶¶ 81-95]. Plaintiffs aver that the "[Indemnification] Counterclaims are frivolous and not brought in good faith." [*Id.* at ¶ 87]. Plaintiffs also assert Defendants "brought their Counterclaims in retaliation for Plaintiffs bringing this action to enforce their rights and the rights of other similarly situated individuals under the FLSA." [*Id.* at ¶ 90]. Mr. Ruiz and Mr. Bryant filed their Motion to Dismiss Defendants' Counterclaims contemporaneously. [#35]. On September 2, 2014, Act Fast and Powerforce filed their Partial Motion to Dismiss, seeking dismissal of Plaintiffs' claim for retaliation [# 36], and their respective Answers to the First Amended Complaint [#37, #38].

## ANALYSIS

**I.      Plaintiffs' Motion to Dismiss Defendants' Counterclaims**

Mr. Ruiz and Mr. Bryant move to dismiss Defendants' respective claims for indemnification based on Paragraph 11 of the ICAs between by Mr. Ruiz and Mr. Bryant as owners of Amarallys Logistics and Bryant Services and Defendants Act Fast and Powerforce, respectively. [#35]. In seeking dismissal, Plaintiffs contend that this court lacks subject matter jurisdiction over the indemnification counterclaims because the Indemnification Counterclaims are permissive, rather than compulsory and the court should decline to exercise supplemental jurisdiction over them [*id.* at 2-9]. Plaintiffs also argue that based on the plain language of the ICAs, Defendants have failed to state a cognizable claim so that the Indemnification Counterclaims should be dismissed pursuant to Fed. R. Civ. P. 12(b)(6).

### A.  Subject Matter Jurisdiction

#### 1.  Standard of Review

Upon a threshold challenge to subject matter jurisdiction over a counterclaim, a court must first determine whether the counterclaim is "compulsory" within the meaning of Federal Rule 13 of the Federal Rules of Civil Procedure. Under Rule 13(a), a compulsory counterclaim is one that "arises out of the transaction or occurrence that is the subject matter of the opposing party's claim and does not require for its adjudication the presence of third parties of whom the court cannot acquire jurisdiction." Fed. R. Civ. P. 13(a). For purposes of Rule 13, actions are of the same "transaction" or "occurrence" if any one of the following conditions is met: (1) the same issues of fact or law are raised, (2) *res judicata* would bar subsequent suit over the claim, (3) the same evidence will support or refute the respective claims, or (4) there is a logical relation between the original claim and the counterclaim. *Driver Music Co. v. Commercial Union Ins.*

*Cos.*, 94 F.3d 1428, 1435 (10th Cir. 1996) (citation omitted). *See also FDIC v. Hulsey*, 22 F.3d 1472, 1487 (10th Cir. 1994) (satisfaction of any one factor establishes jurisdiction over claim). In cases involving non-compulsory state law counterclaims, a federal court may nevertheless exercise permissive supplemental jurisdiction pursuant to 28 U.S.C. § 1331 and Rule 13 if the state law claims are "derive[d] from a common nucleus of operative fact." *United Mine Workers of America v. Gibbs*, 383 U.S. 715, 725 (1966).

### a. Compulsory Counterclaims

Plaintiffs focus on the third and fourth factors of the test under Rule 13, *i.e.*, whether the Indemnification Counterclaims either share a common nucleus of fact with their Wage Claims or whether the respective claims are logically related. Mr. Ruiz and Mr. Bryant vigorously argue that the Indemnification Counterclaims are not compulsory in nature, because their wage claims focus on nature of their actual employment relationship with Defendants and the Indemnification Counterclaims focus on the interpretation of the ICAs. [#35, at 5]. Plaintiffs contend that the Indemnification Counterclaims are not grounded on substantially the same evidence, because the ICAs are secondary to the "focal point in deciding whether an individual is an employee is whether the individual is *economically dependent* on the business." [*Id.* at 5-6 (citations omitted)]. Mr. Ruiz and Mr. Bryant also assert that there is no logical relationship sufficient to sustain compulsory jurisdiction, because the only relationship between their claims and the Indemnification Counterclaims is the employment status, relying upon a number of cases from various jurisdictions to support its argument. [*Id.* at 7-9]. In particular, Plaintiffs cite to cases in which courts, in the context of adjudicating whether counterclaims are compulsory to claims brought under the FLSA, hold that state law claims based on common law breaches of duty or breach of contract are too distinct from the original claims to be compulsory. [*Id.* at 6-7.]

Defendants, on the other hand, argue that their Indemnification Counterclaims are compulsory because all four factors are met. Powerforce and Act Fast assert that Plaintiffs' wage claims and their Indemnification Counterclaims arise out of the same transaction – the execution of the ICAs – and all such claims will turn on the enforceability of the ICAs. [#43, at 3-4]. Defendants also argue that *res judicata* would likely bar the litigation of a subsequent suit for indemnification. [*Id.* at 5]. Finally, Powerforce and Act Fast contend that the same evidence – the ICAs – will be used to refute Plaintiffs' claims as to establish its own Indemnification Counterlcaims, and that the Indemnification Counterclaims are logically related to Plaintiff's wage claims because they again, turn on the enforceability of the ICAs. [*Id.* at 6-7].

Because the employment relationship between plaintiff and defendant does not, by itself, suffice to show that any employment-related counterclaim would arise from the same "transaction or occurrence," I am persuaded that the court should not exercise compulsory jurisdiction over Defendants' Indemnification claims in this case. The claims do not appear to share overlap in terms of proof. The question of whether Mr. Bryant and Mr. Ruiz are "employees" who may avail themselves of recovery under the FLSA is dependent upon a factual inquiry as to Defendants' control over them, *Herr v. Heiman*, 75 F.3d 1509, 1513 (10th Cir. 1996), while the question of whether Act Fast and Powerforce are entitled to indemnification turns on a legal question of contract interpretation. Indeed, the District Court for the District of Kansas cogently distinguished between FLSA claims and an indemnity counterclaim by explaining:

> Although both the plaintiff's FLSA claim and defendant's counterclaim do involve a common element in the nature of Hose's actual employment relationship, the focus of both actions will be different. The plaintiff's claim will center on the proper classification of Hose and the details of his payment, and develop evidence relating to his allegedly unpaid wages. In the resolution of Hose's true status, the contract itself will carry little weight. … None of these

>issues are directly relevant to Henry's counterclaim, in which the contract language is paramount. Evidence as to Hose's exact status is entirely secondary to the facial language of the agreement.

*Hose v. Henry Indus., Inc.*, No. 13-2490-JTM, 2014 WL 1356039, at *2 (D. Kan. Apr. 7, 2014).

### b. Permissive Counterclaims

The analysis, however, does not end there. The court may also exercise supplemental jurisdiction over the Indemnification Counterclaims as permissive counterclaims under 28 U.S.C. § 1367(a) and Rule 13(b). Mr. Ruiz and Mr. Bryant urge the court to decline to exercise supplemental jurisdiction, for essentially the same reasons upon which they based their arguments against considering the Indemnification Counterclaims compulsory, *i.e.*, that outside the relationship between Plaintiffs and Defendants, there is very little overlap between the two sets of claims. [#35, at 8-9]. Defendants argue that the court should exercise supplemental jurisdiction, pointing out that "courts have frequently exercised supplemental jurisdiction over indemnification counterclaims arising from the same contract which is the subject of a lawsuit." [#43, at 9].

As explained above, Plaintiffs' Wage Claims do not necessarily arise from the ICA; indeed, the contention that the ICA does not define the relationship between Mr. Ruiz and Mr. Bryant respectively with Act Fast and/or Powerforce lies at the center of Plaintiffs' Wage Claims. *See Henderson v. Inter-Chem*, 41 F.3d 567, 570 (10th Cir. 1994) (observing that the court's determination as to whether plaintiff was an employee covered by the FLSA was "not limited by any contractual terminology"). However, as Defendants acknowledge [#43, at 17], a finding that Plaintiffs are "independent contractors" rather than "employees" under the FLSA would dispose of the FLSA claim over which this court exercises original jurisdiction. Conversely, a finding that Plaintiffs are "employees" under the FLSA would dispose of

7

Defendants' indemnification counterclaims. *Martin v. Gingerbread House, Inc.*, 977 F.2d 1405, 1408 (10th Cir. 1992) ("Compliance with the FLSA will not be furthered if employees must defend against indemnity actions. . . . The conflict between the purposes of federal law and a state cause of action require the latter to yield. We therefore hold that a third party complaint by an employer seeking indemnity from an employee is preempted."). Thus, splitting this action by dismissing the Indemnification Counterclaims would invite potential duplication of substantial effort and time by both Parties in litigating the central fact-intensive FLSA employment status issue, perhaps simultaneously, in another forum. It could likewise burden another court with resolving a set of issues that will inevitably be adjudicated by this court should the pending action proceed to a final disposition. Therefore, I respectfully recommend that the court deny Plaintiffs' Motion to Dismiss for lack of subject matter jurisdiction, and exercise supplemental jurisdiction over the Indemnification Counterclaims as permissive under Rule 13(b).

### B. Failure to State a Cognizable Claim

Plaintiffs also move to dismiss the Indemnification Counterclaims pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure for failing to state a cognizable claim, based on the theory that: (1) either the contractual indemnity language cannot be read broadly enough to cover Plaintiffs' Wage Claims; or (2) to the extent that the contractual indemnity language is sufficiently broad, it is unenforceable as a matter of law. [#35, at 10-15]. Defendants argue that they have sufficiently alleged facts to support their Indemnification Counterclaims and that Plaintiffs' preemption arguments are premature. [#43, at 11-19].

#### 1. Standard of Review

Under Rule 12(b)(6), a court may dismiss a complaint for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). In deciding such a motion, the court must

"accept as true all well-pleaded factual allegations … and view these allegations in the light most favorable to the plaintiff." *Casanova v. Ulibarri*, 595 F.3d 1120, 1124 (10th Cir. 2010) (quoting *Smith v. United States*, 561 F.3d 1090, 1098 (10th Cir. 2009)).  However, a plaintiff may not rely on mere labels or conclusions, "and a formulaic recitation of the elements of a cause of action will not do." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007).

Instead, "a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009). As the Tenth Circuit explained in *Ridge at Red Hawk, L.L.C. v. Schneider*, 493 F.3d 1174, 1177 (10th Cir. 2007), "the mere metaphysical possibility that *some* plaintiff could prove *some* set of facts in support of the pleaded claims is insufficient; the complaint must give the court reason to believe that *this* plaintiff has a reasonable likelihood of mustering factual support for *these* claims."  "The burden is on the plaintiff to frame 'a complaint with enough factual matter (taken as true) to suggest' that he or she is entitled to relief." *Robbins v. Oklahoma*, 519 F.3d 1242, 1247 (10th Cir. 2008) (quoting *Bell Atlantic Corp.*, 550 U.S. at 556).  The ultimate duty of the court is to "determine whether the complaint sufficiently alleges facts supporting all the elements necessary to establish an entitlement to relief under the legal theory proposed." *Forest Guardians v. Forsgren*, 478 F.3d 1149, 1160 (10th Cir. 2007).

### 2. Sufficiency of Defendants' Indemnification Counterclaims Under Fed. Rule Civ. P. 12(b)(6)

In order to determine whether Defendants can state a cognizable claim for indemnity under the ICA, the court must necessarily consider the terminology that gives rise to the alleged obligation to indemnity. *See e.g.*, *Hausler v. Felton*, 457 Fed. Appx. 727 (10th Cir. 2012) (interpreting the contractual indemnity language to determine whether a cognizable claim was stated); *Shoup v. Higgins Rental Ctr., Inc.*, 991 F. Supp. 1265 (D. Kan. 1998) (same).  Under

Colorado law, in construing the terms of a contract, the court must seek "'to effectuate the intent of the contracting parties according to the plain language and meaning of the contract.'" *Arapahoe Cnty. Water & Wastewater Pub. Improvement Dist. v. HDR Eng'g, Inc.*, No. 08–cv–01788–WYD, 2011 WL 5025022, at *2 (D. Colo. Oct. 21, 2011) (citing *Premier Farm Credit, PCA v. W–Cattle, LLC*, 155 P.3d 504, 517 (Colo. App. 2006)).

By the plain terms of the alleged indemnity provisions at issue, Plaintiffs' potential indemnification liabilities are expressly limited to liabilities, costs, and damages "resulting from or arising out of the operations of Contractor." [#24-1, #25-1]. Defendants argue that Plaintiffs' Wage Claims "logically arise[] out of the Plaintiffs' operations, as the fundamental question raised in the lawsuit is whether Plaintiffs *operated* for Defendants as independent contractors." [#43, at 14 (emphasis in original).] I disagree.

In a case involving similar allegations and arguments from the parties, the District of New Jersey court observed and held as follows:

> [As explained by Plaintiff the alleged indemnification provision deals with "claims ... that arise from the performance of the Counterclaim–Defendants' services and obligations under the Contracts." Plaintiffs argue that their claims about Defendant's payment of wages do not arise from their performance of their obligations under the contracts. Indeed, this appears correct. This litigation plainly arises from the performance of Defendant under the contract, as the employer paying wages, rather than the performance of Plaintiffs as couriers. This is not litigation over something that Plaintiffs made happen by their actions in performing courier work. Rather, it is litigation about allegedly illegal conduct by Defendant in paying Plaintiffs for their work. The allegedly illegal conduct of Defendant in paying Plaintiffs cannot reasonably be understood to fall within the scope of the alleged indemnification provision, as it arises from Defendant's performance, not Plaintiffs'.

*Yaw Adu Poku v. BeavEx, Inc.*, CV No. 13–3327 (SRC), 2013 WL 5937414, at *1 (D.N.J. Nov. 1, 2013). Although the limiting clause in the instant case is broader—as the clause seeks to reach claims arising from the "operations of Contractor" generally rather than with respect to

10

performance under the contract specifically—the essential reasoning applies with equal force here. Plaintiffs are not seeking recovery for liabilities or damages arising from their own "operations." On the contrary, their claims for relief target the purportedly unlawful actions—or "operations"—of Defendants. As a result, Defendants' Indemnification Counterclaims fail to state a cognizable claim as pled and I respectfully recommend their dismissal.

## II.   Defendants' Partial Motion to Dismiss Plaintiffs' Retaliation Counterclaims Under Fed. Rule Civ. P. 12(b)(6)

In their Partial Motion to Dismiss [#36], Defendants seek to dismiss Plaintiffs' retaliation claim as set forth in Plaintiffs' First Amended Complaint [#34]. The FLSA bars "discriminat[ion] against any employee because such employee has filed any complaint or instituted or caused to be instituted any proceeding under or related to this chapter, or has testified or is about to testify in any such proceeding, or has served or is about to serve on an industry committee." 29 U.S.C. § 215(a)(3). Plaintiffs aver that Defendants filed their Indemnification Counterclaims "in order to harass and intimidate the Plaintiffs, interfere with their attempts to vindicate their rights and the rights of other similarly situated individuals under the FLSA, and/or to deter Plaintiffs and other of Defendants' drivers form seeking legal redress under the FLSA for unpaid wages." [#34, ¶ 91].

To state a claim for retaliation under the FLSA, a plaintiff must plead facts to support the following three elements: (1) he engaged in protected activity under the FLSA; (2) he suffered an adverse employment action contemporaneous with or subsequent to the protected activity; and (3) a causal connection between the protected activity and the adverse employment action exists. *Pacheco v. Whiting Farms, Inc.*, 365 F.3d 1199, 1206 (10th Cir. 2004) (citation omitted). Act Fast and Powerforce argue that Mr. Ruiz and Mr. Bryant's claim for retaliation fails as a matter of law because they cannot demonstrate that: (1) they suffered an adverse employment action

11

subsequent to the protected activity or (2) that Defendants' Indemnification Claims are objectively baseless. [#36, at 5-10]. After review of Plaintiffs' First Amended Complaint, the briefing, and the applicable case law, I find that Plaintiffs' conclusory statements and arguments do not amount to a cognizable claim for retaliation.

As an initial matter, the question of whether a counterclaim to a complaint can ever constitute retaliatory discrimination under the FLSA or under cognate provisions in other statutory schemes (like Title VII) appears open in this Circuit. *Timmerman v. U.S. Bank, N.A.*, 483 F.3d 1106, 1123 (10th Cir. 2007) ("While it is certainly an interesting question whether the filing of counterclaims in response to discrimination claims brought by a former employee constitutes an adverse employment action, that question ... need not be decided in this case."). Even assuming without deciding that Defendants' filing of their Indemnification Counterclaims could constitute unlawful retaliation, dismissal is appropriate unless the counterclaims at issue are objectively baseless. *See, e.g.*, *Bill Johnson's Rests. v. NLRB*, 461 U.S. 731, 740-44 (1983) (requiring showing that lawsuit lacked a reasonable basis to allow retaliation claim to proceed). Beyond reciting the legal conclusion that the indemnification counterclaims are "frivolous" [#34 ¶ 87], Plaintiffs' Amended Complaint and count for retaliation fail to provide any of the additional detail that would be necessary to allow for a plausible inference under *Iqbal* and *Twombly* that the claims are indeed baseless. And while I found that the Indemnification Counterclaims fail to state a claim as pled, the proper interpretation of the indemnity provision of the ICAs, namely whether "operations of Contractor" included the payment of wages, is in my view a close enough question that reasonable litigants could differ as to likelihood the Indemnification Counterclaims might ultimately prevail. Therefore, I do not find that Defendants' Indemnification Counterclaims were objectively baseless, and accordingly,

Plaintiffs have failed to state a cognizable claim for retaliation. Accordingly, I recommend dismissal of Plaintiffs' retaliation counterclaims.

## CONCLUSION

Consistent with the reasons set forth herein, I respectfully RECOMMEND that:

(1) Plaintiffs' Motion to Dismiss Defendants' Counterclaims [#35] be GRANTED, DISMISSING Defendants' Indemnity Counterclaims, on the basis that Defendants' Indemnification Counterclaims fail to state a cognizable claim; and

(2) Defendants' Partial Motion to Dismiss Pursuant to Fed. R. Civ. P. 12(b)(6) be GRANTED, DISMISSING Plaintiffs' claim for retaliation as stated in Count IV of Plaintiffs' First Amended Complaint.[1]

DATED: March 3, 2015                                    BY THE COURT:

                                                                   /s/ Nina Y. Wang
                                                                  United States Magistrate Judge

---

[1] Within fourteen days after service of a copy of the Recommendation, any party may serve and file written objections to the Magistrate Judge's proposed findings and recommendations with the Clerk of the United States District Court for the District of Colorado. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); *In re Griego*, 64 F.3d 580, 583 (10th Cir. 1995). A general objection that does not put the District Court on notice of the basis for the objection will not preserve the objection for *de novo* review. "[A] party's objections to the magistrate judge's report and recommendation must be both timely and specific to preserve an issue for de novo review by the district court or for appellate review." *United States v. One Parcel of Real Property Known As 2121 East 30th Street, Tulsa, Oklahoma*, 73 F.3d 1057, 1060 (10th Cir. 1996). Failure to make timely objections may bar *de novo* review by the District Judge of the Magistrate Judge's proposed findings and recommendations and will result in a waiver of the right to appeal from a judgment of the district court based on the proposed findings and recommendations of the magistrate judge. *See Vega v. Suthers*, 195 F.3d 573, 579-80 (10th Cir. 1999) (District Court's decision to review a Magistrate Judge's recommendation *de novo* despite the lack of an objection does not preclude application of the "firm waiver rule"); *International Surplus Lines Insurance Co. v. Wyoming Coal Refining Systems, Inc.*, 52 F.3d 901, 904 (10th Cir. 1995) (by failing to object to certain portions of the Magistrate Judge's order, cross-claimant had waived its right to appeal those portions of the ruling); *Ayala v. United States*, 980 F.2d 1342, 1352 (10th Cir. 1992) (by their failure to file objections, plaintiffs waived their right to appeal the Magistrate Judge's ruling). *But see*, *Morales-Fernandez v. INS*, 418 F.3d 1116, 1122 (10th Cir. 2005) (firm waiver rule does not apply when the interests of justice require review).