**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Chief Judge Marcia S. Krieger**

**Civil Action No. 14-cv-00870-MSK-NYW**

**DOMINGO RUIZ, and
MICHAEL BRYANT, individually and on behalf of all others similarly situated,**

    Plaintiff,

v.

**ACT FAST DELIVERY OF COLORADO, INC.;
POWERFORCE OF COLORADO, INC.,**

    Defendants.

_____

**OPINION AND ORDER DENYING MOTION TO APPROVE SETTLEMENT**
_____

**THIS MATTER** comes before the Court pursuant to the parties' Unopposed Motion to Approve Settlement Agreement **(# 131)**.

This action seeks to remedy the Defendants' alleged failure to pay minimum wages and overtime compensation as required by both the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201 *et seq.*, and the Colorado Wage Claim Act, C.R.S. § 8-4-101 *et seq.* The Plaintiffs initially presented the suit as a hybrid action, litigating the FLSA claims as a collective action pursuant to 29 U.S.C. § 216(b), and the Wage Claim Act claims as a putative class action pursuant to Fed. R. Civ. P. 23. Approximately 73 employees filed timely notices expressing their intention to opt into this litigation for purposes of pursing their FLSA claims. The Plaintiffs later sought certification of the Rule 23 class **(# 127)** for purposes of the state law claim, but settled the action **(# 129)** before briefing on certification could be completed. As a result, it appears that the Plaintiffs have abandoned any claims that are exclusive to the putative Rule 23 class members,

and are proceeding to seek approval of the settlement only with regard to the 73 employees who affirmatively opted into the action under the FLSA's collective action paradigm.

The Plaintiffs now seek the Court's approval of the terms of their settlement. Those terms provide that: (i) the Defendants will pay $275,000, in 23 monthly payments of $12,000, to a designated claims administrator; (ii) the claims administrator will withhold $6,000 from those funds, to be paid as $3,000 incentive awards to each of the two named plaintiffs; (iii) an additional $112,947.03 will be withheld from those funds, to be paid over to the Plaintiffs' counsel in the form of $91,666.67 in attorney fees (that is, 33% of the settlement value) and $21,280.36 in costs; (iv) the remaining $156,052.97 will be paid[1] to the 73 opt-in plaintiffs on a prorated basis determined by each plaintiff's work records (Exhibit A to the settlement agreement lists those plaintiffs and, presumably, the amount each will receive).

### A. Court approval of FLSA settlements

The Court begins by observing that nothing in the text of the FLSA expressly requires court review and approval of settlements. However, parties have followed the routine practice of seeking such approval following *Lynn's Food Stores, Inc. v. United States*, 679 F.2d 1350, 1355 (11th Cir. 1982). In *Lynn's Food*, the court held that "there is only one context in which compromises of FLSA back wage or liquidated damage claims may be allowed: a stipulated judgment entered by a court which has determined that a settlement . . . is a fair and reasonable resolution of a bona fide dispute over FLSA provisions." In *Lynn's Food*, the employer was the subject of an investigation by the U.S. Department of Labor that had concluded that its wage and

---

[1] Neither the Motion nor the attached settlement agreement indicates whether payments to the opt-in plaintiffs will be made in 23 monthly installments as well, whether the plaintiffs will be required to wait 23 months until the final payment is made by the Defendants before any proceeds will be disbursed, or whether some other form of periodic payments to the plaintiffs will occur. Nor does the settlement agreement specify a schedule as to how the incentive payments and fee awards will be deducted from the monthly payments.

overtime policies violated the FLSA. In response, the employer approached its employees directly, offering them a pool of $1000 (approximately a tenth of what the Department of Labor estimated was owed) to divide amongst themselves in exchange for a waiver of any further claim for compensation under the FLSA. Fourteen employees signed an agreement accepting the payment and releasing their claims, and the employer then commenced suit in federal court seeking a declaration that it had no further liability to the Department of Labor with regard to those employees. Relying on *Brooklyn Savings Bank v. O'Neil*, 324 U.S. 697 (1945), and *Barrentine v. Arkansas-Best Freight System*, 450 U.S. 728 (1981), the 11th Circuit noted that the FLSA's minimum wage and overtime requirements "are not subject to negotiation or bargaining between employers and employees" and that "FLSA rights cannot be abridged by contract or otherwise waived." 679 F.2d at 1352. Based solely on these two conclusions, it then stated that a release of FLSA claims pursuant to a private settlement would only be effective if the settlement was reduced to a stipulated judgment[2] against the employer that a court had "scrutinized for fairness." *Id.* at 1353.

In the ensuing years, *Lynn's Food* acquired the patina of authority, with parties (and trial courts) across the country assuming that court approval was required for every FLSA settlement lest the parties' unapproved private agreement be later held unenforceable. More recently, however, courts have begun to question whether this practice based on *Lynn's Food* remains valid. Most notable is the thorough and well-reasoned opinion in *Martinez v. Bohls Bearing Equipment Co.*, 361 F.Supp.2d 608, 618-31 (W.D.Tx. 2005). In *Martinez*, the plaintiff had complained of unpaid overtime compensation. The employer offered him $1000 in full

---

[2] Although *Lynn's Foods* expressly requires that, in order to be effective, a settlement be rendered in the form of a "stipulated judgment" entered by the Court, the parties' proposed order here instead requests that, upon the Court's approval of the parties' settlement, this case be "dismissed with prejudice."

satisfaction of his claim (which amounted to some $3,500), and the employee reluctantly accepted. Later, the employee decided to re-assert his FLSA claim as part of a federal discrimination lawsuit and the employer moved for summary judgment on that claim, citing to the employee's previous release of the FLSA claims.

This Court will not attempt to recapitulate *Martinez*'s exhaustive examination of the legislative history of the FLSA, its amendments, and judicial interpretations addressing the issue of FLSA settlements. It is enough to observe that *Martinez* persuasively concludes that the *Lynn's Food*'s requirement for judicial approval of voluntary settlements was driven by its facts – the employer overreached the employees in inducing them to settle unasserted and unevaluated claims for a small amount of money. The affected employees were largely unaware of the fact that they had rights under the FLSA, had not been advised by an attorney before signing the agreements; indeed, many did not speak English. *Id.* at 628.

*Martinez* also describes an evolution moving "away from the rigid interpretation of statutory rights of the 1940s to a regime which supports settlement as a favored means of resolving disputes." *Id.* at 630, *citing, inter alia, U.S. v. Allegheny-Ludlum Indst.*, 517 F.2d 826, 858-59 (5th Cir. 1975) ("Very frankly, we cannot conceive of how any employment discrimination dispute could ever be resolved outside, or indeed inside, the courtroom, if defendants were forbidden to obtain binding, negotiated settlements"). *Martinez* then summarized its reasoning and delivered its holding:

> Judicial caseloads, as well as the workload of the Wage and Hour Administration, would likely be swamped with unnecessary disputes, many dubious and with little evidence, that could not be finally settled without approval from either a court or the Secretary of Labor. This surely cannot be what was intended by Congress when the FLSA was passed. In fact, less than ten years after the passage of the FLSA, Congress amended the statute to provide for compromises of then-existing claims involving bona fide disputes.

> Though Congress could have made the express availability of such compromises prospective, rather than purely retrospective, it did not prohibit such compromises . . . No court other than the Eleventh Circuit has expressly held that such a settlement is prohibited. . . Therefore, the Court holds that, according to the language of the FLSA, its amendment by the Portal–to–Portal Act of 1947 and the Fair Labor Standards Amendments of 1949, and its interpretation in the case law, parties may reach private compromises as to FLSA claims where there is a bona fide dispute as to the amount of hours worked or compensation due. A release of a party's rights under the FLSA is enforceable under such circumstances.

This Court finds *Martinez*'s reasoning to be thorough, careful, and persuasive, and adopts it with a few further observations. In modern jurisprudence, only a narrow range of settlements require court approval. Among them are settlements in Rule 23 class actions and settlements involving infants or incompetent persons. In such circumstances, judicial review of compromises is necessary because the parties affected – the class members or the incompetent persons – are not directly before the court nor have they necessarily participated in the decision to settle.

The FLSA action, however, does not necessarily reflect either circumstance. The peculiar opt-in nature of an FLSA collective action anticipates that all of those parties who settle are actively participating and are represented by counsel. This Court sees no reason why the public policies underlying the FLSA are any more important than those underlying Title VII, the ADA, or other statutes designed to protect employees against discrimination or oppression, all of which may be effectively compromised by the affected employees in a private settlement without requiring court review or approval. There may be a small number of employers who will resort to subterfuge, misdirection, or coercion to improperly induce employees into surrendering their FLSA rights, but the correct solution to address a narrow problem is not an overbroad rule requiring all FLSA settlements to receive judicial review and approval. Rather, the appropriate

remedy to cure such misconduct is the same remedy used in literally every other context where a settlement is claimed to be coercive, deceptive, or overreaching: upon a proper showing by the employee, the court may set aside the settlement contract and restore the employee's right to seek his or her FLSA remedies directly.

Accordingly, this Court joins with *Martinez* court and the others that have adopted its reasoning, holding that an FLSA claim that is genuinely disputed by the employer may be compromised via a private settlement between the parties, and that such settlement will be legally effective regardless of whether they are submitted to or approved by the trial court. *See e.g. Martin v. Spring Break '83 Productions, LLC*, 688 F.3d 247, 255 (5th Cir. 2012).

That, then, brings the Court to the question of the parties' settlement in this case. Presumably relying upon the long tradition started by *Lynn's Foods*, the parties here may have sought court approval of their settlement because they believed such approval was required for the agreement to be effective. For the reasons set forth above, such approval is not required. It may be that the parties no longer desire to have the Court review and approve their settlement. If that is the case, they need only advise the court that all claims have been resolved, that they desire to dismiss the case or close it. Then they proceed with enforcement of their settlement contract.

If, on the other hand, the parties remain determined to seek judicial review and approval of their settlement for one reason or another, the question then becomes what form that review should take. In a *Lynn's Food* world, where <u>all</u> FLSA settlements must be reviewed and approved by the courts, the level of scrutiny of most "unopposed" motions seeking approval of mundane FLSA settlements is understandably slight. The purpose of such review is primarily administrative, to make sure that the motion is unopposed and to issue the appropriate order.

However, in a post-*Martinez* world, where routine FLSA claims are resolved just like claims in any other multi-party case by private agreement, those settlements that are judicially reviewed due to some unusual quality in the case. For example, when not all opt-in plaintiffs can be contacted to obtain consent, the level of review is necessarily greater. Parties should not expect a rubber stamp approval, but instead a careful study of what has been submitted. With that idea in mind, the Court turns to the particular terms of the parties' settlement here.

### B. The instant motion

As submitted, the Court is unable to approve the parties' settlement for several reasons. First, although the parties have specified the settlement amount, they have not provided a calculation of what the total amount of unpaid wages and overtime is arguably owed to all of the plaintiffs. The motion states only that "[t]he parties also disagreed on the amount of damages owed," without ever reciting the particular amounts that were improperly withheld. Without information as to the total amount of compensation that was claimed, the Court cannot determine whether the settlement sum of $275,000 (or, perhaps more accurately, $156,052.97) reflects a reasonable or unreasonable compromise. *See e.g. Selk v. Pioneers Memorial Healthcare Dist.*, 159 F.Supp.3d 1164, 1174 (S.D.Ca. 2016) ("A district court evaluates the plaintiff's range of potential recovery to ensure that the settlement amount agreed to bears some reasonable relationship to the true settlement value of the claims")

Second, the Court has serious reservations with regard to the request for payment of incentive awards to the named Plaintiffs. Putting aside the question of whether incentive awards are ever appropriate in FLSA cases,[3] the Court finds that the instant motion does not cite any

---

[3] *See e.g. Altnor v. Preferred Freezer Servs.*, ___ F.Supp.3d ___, 2016 WL 3878161 (E.D. Pa. Jul. 18, 2016) (noting that "although commonly permitted by courts, no provision of rule or statute authorizes incentive awards in collective actions" and observing that "Congress selected particular enforcement mechanisms for the FLSA, which do not include any incentive scheme

7

facts that justify any incentive incentives to the named Plaintiffs here, much less in the amounts claimed. Among that factors that might justify an incentive award are: (i) the risk to the plaintiff in commencing the action, both financially and otherwise, (ii) the notoriety and/or personal difficulties encountered by the representative plaintiff, (iii) the extent of the plaintiff's personal involvement in the lawsuit in terms of discovery responsibilities and testimony at depositions and trial, (iv) the duration of the litigation, and (v) the plaintiff's personal benefit arising from his or her capacity as an affected member of the settlement class. *Altnor v. Preferred Freezer Servs.*, ___ F.Supp.3d ___, 2016 WL 3878161 (E.D. Pa. Jul. 18, 2016). The Plaintiffs make no showing as to most of these factors, offering only the generalized assertions that the named Plaintiffs "were instrumental in identifying the alleged wage violations and building the case," that they "participat[ed] in [unspecified] written discovery [and] attended their depositions,"[4] that one Plaintiff also "attended and assisted at the mediation," and that they "acted as liaisons to other class members" in unspecified ways.

Even assuming that the Plaintiffs' participation in the lawsuit was significant or that other factors discussed above favored an incentive award, the Court would still be reluctant to approve awards in the amount of $3,000 to each Plaintiff given the relatively small amount of their own claimed injuries. According to the attachment to the parties' settlement agreement, Mr. Ruiz's apparent share of the settlement is a mere $249; thus, his proposed incentive award is more than

---

like those that were historically present in qui tam or bounty hunter suits"). This Court further notes that many cases that have approved of incentive awards in FLSA cases do so by pointing to precedent involving class actions under Rule 23, without acknowledging the fundamental procedural differences that render collective actions distinct from those types of cases. *See e.g. Tuten v. United Airlines, Inc,*, 41 F.Supp.3d 1003, 1010 (D.Colo. 2014).

[4] The motion seems to indicate that the parties agreed to have 20 representative plaintiffs respond to discovery requests. If this is the case, and the named Plaintiffs were simply two of the 20 selected, it is difficult to conclude that the named Plaintiffs should receive an incentive award due to the burden of responding to discovery, yet the other 18 plaintiffs who also did so should not.

10 times his own ordinary recovery. Mr. Bryant's share of the settlement is approximately $1,388, meaning that his incentive award is also more than double what his recovery would otherwise be. Indeed, of the 73 individuals who opted in to this action, fewer than 20 will receive settlement shares in excess of $3,000, making the incentive awards sought by the named Plaintiffs some of the largest slices of the entire settlement pie. As the court in *Altnor* explained, "[i]f class representatives expect routinely to receive special awards in addition to their share of the recovery, they may be tempted to accept suboptimal settlements at the expense of the class members whose interests they are appointed to guard." *Id.* (rejecting $4,000 incentive awards as excessive where named plaintiffs stood to receive only $1,400 from the settlement), *quoting Weseley v. Spear, Leeds & Kellogg*, 711 F.Supp 713, 720 (E.D.N.Y. 1989). Here, the size of the requested incentive awards are so disproportionate to the named Plaintiffs' actual share of the settlement that this Court would have legitimate concerns that the action was pursued by them predominantly for the purposes of collecting an incentive, not simply for vindicating their own minimal FLSA losses.

Third, the Court is not prepared to conclude that the amount of fees and costs sought by the Plaintiffs' counsel is reasonable. The parties have not supplied the Court with any information the describes the services provided by counsel or the rates charged, much less the type of contemporaneous records and receipts for services that would normally accompany a request for an award of attorney fees under D.C. Colo. L. Civ. 54.3. Rather, the motion largely recites the proceedings reflected in the docket, without indicating how much time was spent on various tasks or by whom. It may be that $100,000 is a fair and reasonable compensation for counsels' work, but the Court will not simply assume it to be so because that figure falls within the contingent fee agreement between the Plaintiffs and counsel. It also may be that 33% or 40%

contingent fee agreements are common, but that does not mean that such sum reflects a reasonable fee for services provided. If the touchstone of the Court's review of a settlement agreement is to ascertain whether the settlement is reasonable and fair to the affected employees, the Court must have adequate evidence to evaluate whether the amount of fees and costs sought is commensurate with the value of the services performed on the Plaintiffs' behalf. Such a determination cannot be made merely from conclusory assertions of the litigation's complexity or even a recitation of filings shown in the docket.

Finally, and most importantly, there is no indication that all opt-in plaintiffs consented to the settlement. The motion gives no indication that the Plaintiffs' counsel has informed each opt-in plaintiff of the terms of the settlement and secured each plaintiff's acceptance of it. Instead, the motion seems to suggest that only the named Plaintiffs have consented to the terms of the settlement – which is understandable in light of the fact that their incentive payments greatly exceed their claims.

The consent of all plaintiffs, either named or who have opted-in, is required for approval of the settlement. This is because every individual opting in to a collective action "has party status . . the same status in relation to the lawsuit as the named plaintiffs." *Halle v. West Penn Allegheny Health Sys., Inc.*, 842 F.3d 215, 225 (3d Cir. 2016), *citing* Wright, Miller & Kane, Federal Practice and Procedure, Civil 3d § 1807. Such status highlights a fundamental difference between collective actions under the FLSA and Rule 23 class actions.

It may be helpful to conceptualize this FSLA lawsuit as a multi-plaintiff action with 73 separate plaintiffs, each of whom asserts an independent FLSA claim. Unlike representative Plaintiffs in a Rule 23 class action, Mr. Ruiz and Mr. Bryant cannot act on behalf of the other

10

opt-in plaintiffs in settling this matter.[5] In this action, <u>every</u> plaintiff has an individual right to decide whether to settle and upon what terms. As a result, only the claims of those plaintiffs who consent can be compromised. If one or more plaintiffs do <u>not</u> consent to these terms, they cannot be forced to settle, and such claims proceed to trial.[6]

Admittedly, there could be circumstances in which the nature or size of the opt-in group makes it impractical to solicit and obtain universal consent before an action can be settled in its entirety. This Court need not explore those circumstances at this time, nor consider the alternative means of demonstrating that might be appropriate in such event, insofar as the Court is not inclined to assume that a group of 73 plaintiffs is sufficiently numerous to require specialized handling. Given the technological means for effectively communicating with large groups of individuals, the Court is confident that the Plaintiffs' counsel can effectively inform

---

[5] *Compare Halle*, 842 F.3d at 219-20 (mentioning opt-in consent form that included each plaintiff's agreement to "authorize the named plaintiffs to make decisions on my behalf concerning the litigation . . . including any settlement"). The opt-in forms found in the record here **(# 107)** do not reflect similar language, and the motion gives no indication that the opt-in plaintiffs have otherwise contractually agreed to be bound by the named Plaintiffs' decisions.

[6] The Court is cognizant that this injects additional complications into settlement negotiations. An employer facing claims from 50 opt-in plaintiffs may wish to consummate a global settlement that resolves all 50 claims for a given amount of money. But if 5 plaintiffs choose to reject the settlement and proceed to trial, the employer might not wish to proceed with the settlement of the other 45 claims, or may demand a reduction in the settlement amount to compensate for the holdout plaintiffs. (And that reduction may result in additional defections from the original 45 plaintiffs, beginning a cascade that tears the entire settlement apart.) Moreover, the existence of a group of clients that wish to settle on certain terms and a separate group of clients who simultaneously refuse to settle on those terms could, conceivably, present produce a conflict of interest in counsel's ongoing representation of both groups that could raise ethical concerns.
    The Rule 23 paradigm avoids both difficulties by allowing a sufficient majority of Plaintiffs to cramdown a settlement on a non-consenting minority of Plaintiffs. But, as noted, a FLSA collective action is not a Rule 23 class action, and FLSA plaintiffs have rights and privileges that Rule 23 class members do not.

each of the opt-in plaintiffs of the nature and terms of the settlement and secure some manifestation of each plaintiff's consent to that settlement.[7]

Accordingly, the Court **DENIES** the Motion to Approve Settlement Agreement (**# 131**). Within 45 days of the date of this Order, the parties shall:

1) Request that the case be closed or all claims dismissed with prejudice premised upon an express representation that all plaintiffs, both named and those who have opted-in, have resolved their claims against the Defendant. If not all claims are settled, then specify those to be tried.  or

2) Request approval of a settlement supplementing the motion as indicated in this Order;

Dated this 9th day of January, 2017.

**BY THE COURT:**

_Marcia S. Krieger_

Marcia S. Krieger
Chief United States District Judge

---

[7] The Court will not, at this time, dictate any particular form that this notice should take. No proposed notice has been tendered and the Court declines any invitation to be the primary author of such notice on its own initiative. Rather, when (and if) the Plaintiffs move again for court approval of the settlement, that motion must include a copy of any notice that was given to the plaintiffs, and the Court will evaluate at that time whether the notice provided each plaintiff with sufficient information that those plaintiffs' consents can be deemed reliable.